Allen, J.
At a Circuit court held for the county of Hanover on the 7th April 1848, the appellee exhibited *272 a paper writing purporting to be the last will and testament of Ann W. Nuckols, and offered the same for pro-bat. There was no subscribing witness to the paper, and the validity of the instrument as the will of the deceased depended mainly on the proof of her hand writing. The deceased at the time of her death was a married woman, but by the terms of a marriage agreement possessed the power of disposing of her separate estate at her death. Her husband who survived her appeared and contested the probat; and having died during the pendency of the controversy, his administrator with the will annexed, appeared and was permitted to enter himself as the opponent of the probat. Ou motion of the contestant a jury was ordered to be empanneled to ascertain and determine whether the paper writing propounded was the true last will and testament of the deceased. After some continuances the controversy came on for trial at the April term 1850, and the jury found that the paper propounded was the true last will and testament of the deceased.
Several exceptions were taken to decisions of the Court during the progress of the trial; and after the verdict a motion was made for a new trial upon the ground of after discovered testimony, and also upon the ground that the finding of the jury was contrary to evidence: both motions were overruled and the appellant excepted. The first exception taken during the trial was to a decision of the Court overruling a motion to exclude the deposition of William Glenn taken by the appellee to be read de bene esse, because there was no sufficient evidence to shew the inability of the witness to attend. It was proved by the magistrate who took the deposition that the witness was an old man, probably between seventy-five and eighty years of age; that he complained of ill health, stating that his physicians represented he was labouring under rheumatism of the heart, and the witness was of opinion that Glenn was unable to ride on *273 horse back from his house to the court house ; and another witness testifies to the age of Glenn and gives it as his opinion he could not travel to the court house without danger to his health and probably his life. This testimony of itself proves sufficient inability to attend to warrant the reading of the deposition; and its force is not weakened by the evidence on the other side that some two or three years before Glenn was in the habit of riding to the city of Richmond, and that the witness who deposes to this fact when he last saw him did not perceive any change in his general appearance and health. In addition to this evidence is the affidavit of Glenn given immediately before the trial, in which he swears that from sickness and infirmity he was unable to attend the Court. This of itself would have justified the reading of the deposition, as was decided by this Court in Pollard v. Lively, 2 Gratt. 216.
The objection to the whole deposition being overruled, the appellant moved the Court to exclude from the jury those parts of the deposition in which the witness testifies, that a paper writing purporting to be the last will of the deceased, and which had been shewn to him, as the witness stated, by the propounder of the will sometime before the taking of the depositions, was in the hand writing of the deceased; because those parts of the deposition are not legal and competent evidence, and are irrelevant and unconnected with the issue. The proposition presented by the exception, is whether it was competent for the witness to give evidence of the hand writing of a paper shewn to him previously by the appellee as the will of the deceased, without having the paper before him when he gave his deposition, or without distinct proof that the paper shewn to him, was the paper offered for probat. The objections it seems to me, go rather to the weight of the evidence than to the competency of the witness. The paper when exhibited for probat, becomes part of the records of the Court, and *274 it would not be in the power of the party, in many cases, procure the original so that a witness at a distance from the office where it was deposited, could inspect it when giving his testimony. In such case he would necessai’ily be constrained to speak from his recollection of the paper if formerly examined by him. Whether the testimony proved the identity of the paper was a question for the jury. The witness had been cross examined on each occasion when his deposition was taken. But no intimation was given that the paper shewn to and seen by the witness was not the one exhibited for probat. Nor does any exception appear to have been filed to the reading of the depositions or these portions of them before the jury was sworn. Under these circumstances it would have operated as a surprise on the other side to have excluded the deposition from the jury entirely. The weight they would allow to it would depend upon the question whether the paper spoken of by the witness was sufficiently identified by all the testimony in the cause, with the paper offered for probat.
Another witness, Elizabeth Glenn, having testified in her examination in chief that she believed the paper-offered for probat and the signature thereto to be in the hand writing of the deceased; and that she had seen the deceased write often, and had frequently seen her hand writing; was asked on her cross examination if she had seen another paper purporting to be in the hand writing of the deceased. She answered that she had, and that it had been shewn to her by Mr. Harding. And being asked if she did not say that the paper so exhibited to her was in the hand writing of the deceased, replied she had not, but thought the signature to it was like the hand writing of the deceased. The appellant after all the evidence had been adduced for the propounder of the will, introduced a witness, Harding, who testified among other things that after . the death of the alleged .testatrix, having become inter *275 ested in her property by a purchase from her husband, but which interest he had released, and having heard of the existence of the paper offered for probat, and that the witnesses, E. Glenn and her father, were relied on to prove the hand writing, called to see them, and understanding from them that they were acquainted with the hand writing of the deceased, and that they had seen the paper offered for probat and believed it to be in her hand writing, for the purpose of testing the accuracy of their knowledge in regard to the hand writing of the deceased, exhibited to them a paper which he had prepared, imitating the writing of the deceased and purporting to be signed by her. And the witness was then asked what was said by E. Glenn and her father in reference to the paper so exhibited to them by the witness ; but the propounder of the will objected to any answer being given by the witness to the question; and the objection being sustained by the Court no answer was given by the witness; to which decision the appellant excepted. The answer to the question must have been intended to contradict what the witness E. Glenn had said on her cross examination, and so to impeach her credit; or must have been intended to weaken confidence in the ability and skill of the witnesses in judging of the hand writing of the deceased, by shelving that they were imposed upon by the spurious paper prepared by the witness and exhibited to them. It does not appear that E. Glenn alluded to this paper in her examination in chief. The question before the jury was whether the paper offered for probat was in the hand writing of the deceased; any statements made at another time by the witness touching the matter in issue and contradicting her evidence in chief in regard to the paper, to the hand writing of which she had deposed, would have been proper as tending to impeach the credit of the witness. But what she may have said about any other paper at any other time, having no *276 relation to the paper offered for probat, was a distinct collateral fact, as to which she could not be examined for the purpose of impeaching her testimony by contra-dieting her, nor was it competent after such question was Put anc^ answered to adduce evidence to contradict the answer. Harris v. Wilson, 7 Wend. R. 57; Charlton v. Unis, 4 Gratt. 58. Such a course of examination would raise different issues and tend to divert the minds of the jury from the real enquiry before them; for if the statement so made in regard to any collateral paper was contradicted, the other side would be authorized to sustain it; and so the genuineness of every collateral paper would be put in issue.
Still less was it competent to offer such evidence to test the skill and ability of the witness to speak as to the hand writing of the deceased. The circumstances under and the purposes for which it was prepared shew a design to circumvent and entrap the witness by exhibiting a forged paper, a fact which of itself justified the rejection of the evidence; and as the paper so exhibited to the witness was not produced, the evidence would not have furnished any test of skill. For that would have depended upon the success with which the hand writing of the deceased had been imitated in the paper exhibited to the witness.
After the verdict the appellant moved for a new trial upon the ground of after discovered testimony unknown to him when he went into the trial; and in support of the motion filed his affidavit in which after stating that he had made diligent enquiries for evidence to prove that the paper offered for probat was not in the hand writing of the deceased, before the trial, he had since the trial been informed and believed that the paper had been shewn by the propounder to two females who were acquainted with the hand writing of the deceased and would if examined have testified that they did not believe the paper was in her hand writing; the *277 persons referred to it appeared resided in the county and within six miles of the appellant. This affidavit did not furnish any ground for setting aside the verdict. He had not seen or conversed with the persons whose testimony is deemed material; his affidavit is based on mere reports derived from others, and there is nothing to shew that the persons referred to would testify in the manner supposed. Even if the affidavits of the supposed witnesses were dispensed with, there should have been the affidavit of some person who had seen and conversed with them: it would lead to endless litigation if verdicts fairly rendered should be set aside upon a mere rumor that other testimony might be procured. The controversy had been pending in Court for two years, the administrator had made himself a party to the contest eighteen months before the trial, and the cause turned upon the proof of hand writing. The parties went into the trial prepared with their evidence on this question, and the testimony supposed to be since discovered is not evidence of any new fact, but merely cumulative evidence bearing upon the question in regard to which the parties had been at issue from the beginning. This is a species of evidence which has not generally been regarded as a good ground for granting a new trial. Callaghan v. Kippers, 7 Leigh 608.
A different practice would hold out inducements to a negligent or fraudulent suitor to omit the use of proper diligence in preparing for trial, or to withhold a portion of his testimony until he had discovered the strength of his adversary’s case, with the expectation of being able to overthrow it by preponderating testimony at a subsequent trial. Upon both grounds, the absence of any direct evidence from the persons referred to, or from any person having communication with them, and the character of the testimony it was reported they would give, the motion was properly overruled.
*278 There was an additional reason for refusing to set aside the verdict in this case. A motion for a new trial is addressed to the sound discretion of the Court, to be exercised in view of all the facts developed on the trial. Judge Cabell, in the case of Callaghan v. Kippers, 7 Leigh 608, observes that Courts exercise the power of granting new trials upon the ground of after discovered testimony, rarely, and with great caution; and never but under very special circumstances. The party asking its exercise must shew he was ignorant of the existence of the evidence, that he was guiltless of negligénce, and that the new evidence if it had been before the jury, ought to have produced a diiferent verdict. In this case the bill of exceptions sets out the facts proved at the trial, which this Court held in the case referred to, was essential in order that the appellate Court might be furnished with the means of ascertaining whether the Court below clearly erred. From this certificate of the facts it appears that five witnesses introduced by the appellee deposed that they believed.the paper to be wholly in the hand writing of the deceased. One of these was a magistrate residing in her neighbourhood; another a store keeper near her residence who had often seen her write, and had often received orders from her, which she recognized as genuine ; and a third her brother who had gone to school with her for five years, had spent much time with her since she was a woman, and some time since she was married, had corresponded with her and knew her hand writing well. On the other side two witnesses were examined as to this question, one of whom would not at first have taken it to be the hand writing of the deceased, but upon closer inspection and his attention being called to the manner in which some letters were formed and their disconnection, doubted whether it was in her hand writing or not; so that his testimony as to this matter could have *279 no influence. The second witness who did not believe the paper to be in her hand writing, was one of those who at one time had acquired an interest in the proper- . ty by purchase from the surviving husband, but the contract was afterwards cancelled: A fact which though it might not have affected his credit may have insensibly influenced his judgment. If the two females referred to in the affidavit had concurred with this witness there would have1 been three witnesses to five upon the question of hand writing; so that the new evidence reported to exist, if it had been before the jury, ought not for any thing disclosed by the record, to have produced a different verdict; for the weight of evidence on the question of hand writing would have inclined in favour of the verdict as found.
On the merits the case is free from difficulty. The paper on its face gives conclusive evidence of testamentary intent. It disposes of the whole estate, and states that it is her last will and testament: And being proved to the satisfaction of the jury and the Court, to be wholly in the hand writing of the testatrix, and being signed by her, it is a complete statutory disposition of her property. That the jury was justified by the evidence in finding it to be wholly in her hand writing, and could not properly have arrived at any other conclusion if they believed the witnesses, appears from what has already been said in reference to the testimony on the question of hand writing. The objections growing out of the appearance of the paper and the circumstances attending its discovery, might with some give rise to suspicion; whilst' others, in view of the character and temperament of this old woman, her fear and distrust of her besotted husband with whom she lived unhappily, and from whom she frequently separated, her repeated declarations of her wish that no part of her property should be enjoyed by him, her com *280 plaints that he had threatened to break open her trunk and her fears that he might do it, would probably con-elude that the mode adopted to preserve her will and . . r r have it placed in the hands of her brother, was natural an-d characteristic. All this however is matter of speculation, and can have but little influence when it is satisfactorily shewn that the paper left by her shews upon its face a testamentary intent, is a completed instrument, and is wholly in her hand writing. I think there was no error in any of the decisions of the Court during the progress of the trial, which have been excepted to ; that the motion for a new trial upon both the grounds relied on was properly overruled; and that the sentence should be affirmed.
Baldwin and Moncure, J’s, concurred in Allen’s opinion.